In the Matter of the Tax Appeal of AMCO ELECTRIC COMPANY, Taxpayer

NO. 5697

AUGUST 27, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Pursuant to HRS § 232-19 (Supp. 1975), Amco Electric Company (hereinafter referred to as taxpayer) has appealed from a judgment by the tax appeal court which upheld the disallowance by the director of taxation of an exemption from the general excise tax claimed by the taxpayer. We affirm.

A stipulation of facts was filed in the tax appeal court. Since the issue presented to us is primarily the proper construction of HRS § 237-26, rather than its application, only a brief synopsis of facts need be recited. In 1969, the taxpayer, a California specialty electrical contractor entered into two sub-contracts with Cenco Piping Corporation to furnish certain equipment, material and labor for projects located at two U.S. Navy installations in Hawaii. Cenco Piping Corporation was a general contractor for the U.S. Navy, Naval Facilities Engineering Command. During the period January 1, 1970 to June 30, 1971, the taxpayer performed its contracts at the projects, the only business it did in Hawaii, obtained a Hawaii

general excise tax license, and filed periodic and annual Hawaii general excise, use and withholding tax returns in which the taxpayer claimed the proceeds received from Cenco Piping Corporation as exempt from Hawaii general excise tax pursuant to HRS § 237-26. Although a similar exemption claimed by Cenco Piping Corporation in connection with the same projects was specifically allowed by the office of the Hawaii Attorney General, the director of taxation disallowed the taxpayer's claim of exemption and assessed the taxpayer $22,659.71 general excise tax. The taxpayer paid this amount under protest and appealed to the tax appeal court seeking refund of the amount paid in protest.

In upholding the director of taxation's action, the tax appeal court concluded that HRS § 237-26, given its plain meaning, did not encompass subcontracts and that subcontracts were not covered by the exemption until after the 1970 legislature extended coverage by an amendment which became effective in 1971. In its conclusions of law the tax appeal court stated:

> "The exemption provision does not exempt all activities or businesses whose gross proceeds may be traced to the gross proceeds arising from the performance of a contract with the United States. The exemption provision covers only those gross proceeds arising from the exempt business or activity, which is 'the performance of any contract with the United States.' "

The tax appeal court also ruled that the taxpayer was not denied equal protection by the provision.

Prior to the 1970 amendment, HRS § 237-26 stated:

"§237-26 *Exemption of certain scientific contracts with the United States.* Any provision of law to the contrary notwithstanding, there shall be exempted from, and excluded from the measure of, the taxes imposed by this chapter 237, all of the gross proceeds arising from and all of the amount for tangible personal property furnished in conjunction with the performance of any contract with

the United States (including any agency or instrumentality thereof that is wholly owned or otherwise so constituted as to be immune from the levy of a tax under chapter 238) involving primarily the research and development for, or the design, manufacture, instrumentation, installation, maintenance, or operation of electronic, test range, aerospace, oceanographic, geophysical, or other scientific facilities.''

That exemptions are strictly construed against the taxpayer is a long-standing and uniformly applied rule of construction in this jurisdiction. *In re Taxes, 711 Motors, Inc.*, 56 Haw. 644, 547 P.2d 1343 (1976); *In re Taxes, Aloha Motors, Inc.*, 56 Haw. 321, 536 P.2d 91 (1975); *In re Taxes, Pacific Marine & Supply Co.*, 55 Haw. 572, 524 P.2d 890 (1974); *Honolulu Star Bulletin v. Burns*, 50 Haw. 603, 446 P.2d 171 (1968); *In re Taxes, Johnson*, 44 Haw. 519, 356 P.2d 1028 (1960); *In re Taxes, Perry*, 36 Haw. 340 (1943). As quoted in *Tax Assessor v. Wood*, 18 Haw. 485 (1934), " 'a doubt is fatal to the claim' of exemption." Applying this rule of construction to HRS § 237-26 as it read prior to the 1970 amendment, the tax director interpreted the section as not applying to gross proceeds of subcontracts between the prime contractor and any other contractor. *See* Tax Information Release 19-68 (P-H State and Local Taxes, Hawaii, ¶23,026). The director's postion in the case before us is that the taxpayer did not have "any contract with the United States" and therefore cannot qualify for the exemption. The taxpayer, on the other hand, urges that attention should be focused upon the words "proceeds arising from" any contracts with the United States. Its position is that the proceeds it received from Cenco Piping Corporation did arise from a scientific contract with the United States and that the statute exempts the proceeds. Though the statute may be susceptible to the interpretation given by the taxpayer, we resolve the doubt against the taxpayer and hold that HRS § 237-26 prior to its amendment did not provide an exemption for subcontractors.

In 1970, the legislature amended HRS § 237-26 in order to "extend the exemption to subcontractors."[1] As amended by Act 180, Section 13, S.L.H. 1970, HRS § 237-26 read as follows:

"Section 237-26. *Exemption of certain scientific contracts with the United States.* (a) Any provision of law to the contrary notwithstanding, there shall be exempted from the measure of the taxes imposed by chapter 237, all of the gross proceeds derived by a contractor or subcontractor arising from the performance of any scientific work as defined in subsection (b), under a contract or subcontract entered into with the United States (including any agency or instrumentality thereof), and all of the gross proceeds derived from the sale of tangible personal property by a seller of such tangible personal property to such contractor or subcontractor; provided, however, the exemption herein shall apply only to those tangible personal property which is to be affixed to, or to become a physical, integral part of the scientific facility, or which is to be entirely consumed during the performance of the service required by the contract or subcontract.

(b) For purposes of this section, 'scientific work' is work involving primarily the research and development for, or the design, manufacture, instrumentation, installation, maintenance, or operation of an electronic, test range, aerospace, oceanographic, geophysical or other scientific facilities. Maintenance or operation, for purposes of this section, shall include housekeeping functions in providing certain nonscientific logistic and support services."

The taxpayer argues that by amending the statute in 1970 the legislature merely intended to clarify the law as it existed

---

[1] Conference Committee Report No. 21, 1970 House Journal Regular Session, 1258-1261; Conference Committee Report No. 24-70, 1970 Senate Journal, Regular Session, 1019-1021; see also Standing Committee Report No. 108-70, House Committee on Finance, 1970 House Journal, Regular Session, 785, 787.

prior to the amendment. The director of taxation, on the other hand, points out that the amendment to HRS § 237-26 was only "effective for taxable years beginning on or after January 1, 1971"[2] and that Section 14 of Act 180, S.L.H. 1970, specifically provided:

"The exemption provided by Section 8 shall not apply to (1) gross proceeds derived from subcontracts executed prior to the effective date of this Act; (2) gross proceeds derived from the sale of tangible personal property to subcontractors performing under a general scientific contract where such sales are made prior to the effective date of this Act; (3) gross proceeds derived from maintenance and operation contracts or from sales of tangible personal property pursuant to such contracts executed prior to the effective date of this Act."

At oral argument we informed counsel that while Section 14 of Act 180 begins by stating "The exemption provided by Section 8 shall not apply . . .", Section 8 of Act 180 provides the effective dates for amendments to the income tax law — not the excise tax law — and it does not provide any exemption whatsoever.

In a supplemental brief which we requested, the director of taxation reported that the legislative history of Act 180 shows that the amendment to HRS § 237-26 was originally numbered by the House as Section 8, that the Senate redesignated the section as Section 18 without making a change in substance and a conference committee finally redesignated the section as Section 13. What was finally enacted as Section 14 had originated in the House version as Section 9, and had been redesignated as Section 19 in the Senate where the only amendment was to correspond it to Section 18 of the Senate draft. The director urges that the words "Section 8" contained in Section 14 mean Section 8 of the House draft which is identical to Section 13 of Act 180 as finally enacted and that Section 14 should be construed to refer to Section 13 of Act 180. Because of the ambiguity found in the very words of Act

---

[2] Act 180, Section 15, S.L.H. 1970.

180, because the legislative history of the act does not contain the slightest hint that the legislature intended to substantively modify Sections 13 and 14 of Act 180, and because Section 14 of Act 180 specifically refers to "subcontracts" and "subcontractors performing under a general scientific contract", we hold that Section 14 of Act 180 refers to Section 13, rather than Section 8, of Act 180. HRS § 1-15; *Hall & Son v. Dickey*, 15 Haw. 590 (1904).

Section 14 of Act 180, therefore, nullifies the taxpayer's argument that the 1970 amendment merely clarified the law. Rather, the legislature specifically recognized that the prior law did not provide an exemption for subcontractors. We hold that the tax appeal court correctly ruled that the director's denial of the exemption claimed by the taxpayer was proper.

The taxpayer's equal protection argument is without merit. *See, In re Taxes, Pacific Marine & Supply Co.*, 55 Haw. 572, 524 P.2d 890 (1974).

Affirmed.

Amco Electric Company pro se, appellant.

*Richard Y. Wada*, Special Deputy Attorney General, *(Ronald Y. Amemiya*, Attorney General, of counsel) for Director of Taxation, appellee.